IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MOHAMMED MARGA | * | |
| v. | * | Civil No. RDB-11-2823 |
| UNITED STATES OF AMERICA | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal No. RDB-09-0166 |
| MOHAMMED MARGA | * | |

## MEMORANDUM OPINION

The *pro se* petitioner Mohammed Marga has filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 81). Petitioner challenges his sentence of seventy-eight months on grounds that he received ineffective assistance from both his trial and appellate counsel, which resulted in violations of his rights under the Sixth Amendment. Petitioner also has two other motions pending before this Court—a Motion for Release of his co-defendant's sentencing transcript (ECF No. 80) and a Motion to Compel Correction of Court Records (ECF No. 96).

Upon reviewing Petitioner's motions and the Government's opposition thereto, this Court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated below, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 81) is DENIED; his Motion for Release (ECF No. 80) is DENIED; and his Motion to Compel Correction of Court Records (ECF No. 96) is MOOT.

BACKGROUND

On December 11, 2009, a jury found Mohammed Marga ("Petitioner") guilty of possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1), and conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 846. Verdict, ECF No. 41. This Court

sentenced Petitioner to a seventy-eight-month prison term for each count, to be served concurrently, with a four-year period of supervised release. Judgment, ECF No. 50.

The facts of this case are taken from the Government's Response to Petitioner's Motion to Vacate. Gov.'s Resp., ECF No. 87. On March 19, 2009, Petitioner traveled from New York City to Baltimore to complete a heroin deal. *Id.* at 2-3. Petitioner brought an amount of heroin greater than one hundred grams to sell to customers in Baltimore. *Id.* at 3. Petitioner met with Edward Aboagye ("Aboagye"), Petitioner's co-defendant in this case, and the two men drove to the Waterfront Marriot Hotel in downtown Baltimore. *Id.* at 2-3. After arriving at the hotel, Petitioner and Aboagye left to pick up an associate of Aboagye named "Latif." *Id.* All three men returned to the hotel, where they met with another man named "Harrison" in room 1617. *Id.* Both Petitioner and Latif gave Harrison heroin during this meeting, which Harrison placed in the hotel room's safe. *Id.* Petitioner returned to the Waterfront Marriot Hotel the next day to discuss payment with Harrison. *Id.* at 4. Harrison did not pay Petitioner, but assured him that he would. *Id.* Aboagye's girlfriend, Stannina Akonner ("Akonner"), picked up Petitioner and Aboagye from the hotel. *Id.* Harrison and Latif also left the hotel at the same time, leaving the bags of heroin in the hotel room's safe. *Id.*

After leaving the hotel, Petitioner informed Aboagye that they needed to meet with a man named "Malik," whose real name is Hubert Botaine,[1] about a car deal. *Id.* at 5. In addition to selling the heroin, Petitioner had travelled to Baltimore to purchase a BMW X5 from Botaine. *Id.* at 3. Petitioner met with Botaine and placed a $500 deposit on the car. *Id.* at 5. Petitioner, Aboagye, and Akonner then met with another heroin dealer named Jermaine Stukes ("Stukes"). *Id.* Petitioner had previously sold heroin to Stukes, and wanted some of it back to buy the car from Botaine. *Id.*

After this meeting, Aboagye called the hotel and learned that hotel employees confiscated and secured the heroin that they found in room 1617. *Id.* Aboagye advised Petitioner of this, but Petitioner believed that Aboagye and Harrison were attempting to scam him out of the money owed to him for the

---

[1] *See* Pet'r's Mot. 5.

heroin. *Id.* Upon Petitioner's order, Aboagye drove to the hotel. *Id.* Once they arrived, hotel employees notified the police and officers arrested both men. *Id.*

On March 31, 2009, a grand jury indicted both Petitioner and Aboagye on one count of possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1), and one count of conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 846. Indictment, ECF No. 1. A four-day jury trial took place from September 21 to September 24, 2009. On September 25, 2009, a jury found Petitioner guilty of both counts (ECF No. 41). On December 11, 2009, this Court sentenced Petitioner to a prison term of seventy-eight months for both counts, to be served concurrently, and a four-year period of supervised release (ECF No. 49). Afterward, Petitioner appealed his conviction to the United States Court of Appeals for the Fourth Circuit. Notice of Appeal, ECF No. 52. The Court of Appeals affirmed Petitioner's conviction on March 18, 2011. *See United States v. Marga*, 418 F. App'x 163 (4th Cir. 2011).

On September 26, 2011, Petitioner filed the pending Motion to Vacate pursuant to 28 U.S.C. § 2255 (ECF No. 81). In his Motion, Petitioner claims that he received ineffective assistance from both trial and appellate counsel. Specifically, he argues that trial counsel failed to prepare for trial, obtain polygraph evidence, call certain witnesses at trial, object to the use of cell phone records as evidence, and properly cross-examine the Government's witnesses. *See* Pet'r's Mot. 1-2, 6-7. Petitioner further alleges that trial counsel should have objected to the presence of certain statements in Aboagye's plea agreement, which the Government submitted as an exhibit, because they were actually statements that Petitioner made during his own plea negotiations. *See id.* at 3. Petitioner also faults trial counsel for not obtaining Aboagye's plea agreement through discovery prior to his trial. *See id.* at 2. Finally, Petitioner claims that during the period when appellate counsel was preparing Petitioner's appeal, counsel did not respond to Petitioner's mail or use the arguments that Petitioner recommended. *See id.* at 11. Upon review of Petitioner's Motion, this Court finds that all of Petitioner's claims are meritless. Therefore, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 81) is DENIED.

STANDARD OF REVIEW

Documents filed *pro se* are "liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). In order to establish a claim for ineffective assistance of counsel, Petitioner must prove both elements of the test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). First, Petitioner must show that his counsel's performance was so deficient as to fall below an "objective standard of reasonableness." *Id.* at 688. In assessing whether counsel's performance was unconstitutionally deficient, courts adopt a "strong presumption" that a counsel's actions fall within the "wide range of reasonable professional assistance." *Id.* at 689. Second, Petitioner must show that his counsel's performance was so prejudicial as to "deprive the defendant of a fair trial." *Id.* at 687. In order to establish this level of prejudice, petitioner must demonstrate that there is a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Satisfying either of the two parts of the test alone is not sufficient; rather, the petitioner must meet both prongs of the *Strickland* test in order to be entitled to relief. *See id.* at 687.

ANALYSIS

In his Motion to Vacate, Petitioner asserts claims of ineffective assistance of both trial and appellate counsel. This Court first addresses Petitioner's claims regarding trial counsel's performance. Finding that Petitioner fails to meet his burden under *Strickland* with respect to trial counsel's performance, this Court moves on to Petitioner's claim that appellate counsel did not provide effective assistance. This Court finds that Petitioner's claim against appellate counsel also has no merit.

## I. Petitioner's Claims of Ineffective Assistance of Trial Counsel

Petitioner argues that trial counsel provided ineffective assistance for fifteen reasons listed in his Motion to Vacate. None of these arguments passes the *Strickland* test. The performance prong of *Strickland* states that courts must adopt a "strong presumption" that a counsel's actions fall within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Almost all of Petitioner's claims merely express dissatisfaction with his trial counsel's representation and handling of

4

his case, and none of them demonstrates any clearly unreasonable actions taken by counsel. This Court addresses each of Petitioner's claims below.

A. *Some of Petitioner's Claims Lack Sufficient Factual or Legal Basis*

At the outset, this Court finds that several of Petitioner's claims are deficient because they are unsupported by factual or legal bases. Some claims are too broad to be properly considered. *See, e.g., United States v. Roane*, 378 F.3d 382, 400-01 (4th Cir. 2004) (stating that generalities and conclusory assertions are not sufficient to entitle a habeas petitioner to an evidentiary hearing); *Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) ("Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."). Specifically, Petitioner argues that trial counsel failed to advise him about his case, obtain evidence, conduct discovery, object to the drug evidence at trial as hearsay, and even use a defense at trial.[2] *See* Pet'r's Mot. 6-7. In making these arguments, Petitioner attempts to mount a *Strickland* claim; however, Petitioner fails to articulate any specific theory of ineffective assistance of counsel. *See Nickerson*, 971 F.2d at 1136. Without more clarification and specificity, this Court cannot evaluate Petitioner's broad claims of ineffective assistance of counsel on these points.

Additionally, Petitioner fails to lay the factual groundwork for two of his claims. Though he asserts that trial counsel did not comprehend plea bargaining in the federal court system and that trial counsel misinformed Petitioner about his ability to leave the United States, Petitioner does not explain the precise actions that trial counsel took that were objectively unreasonable.[3] *See* Pet'r's Mot. 6-7. Instead, Petitioner merely offers conclusory statements about his trial counsel's performance, which cannot be supported as valid *Strickland* claims. *See Roane*, 378 F.3d at 400-01; *Nickerson*, 971 F.2d at 1136.

---

[2] These five claims are asserted in list format, with no factual allegations or citations to relevant law, let alone any arguments under *Strickland*.

[3] These two claims are also asserted in list format without any specific facts to support them. Petitioner merely states that counsel possessed a "miscomprehension of plea bargaining in Federal Courts" and "misinform[ed] petitioner to think that he could leave the country, and not put his wife and family into the ordeal of a trial." *See* Pet'r's Mot. 6-7.

5

B. *Petitioner's Claims Regarding Counsel's Trial Strategy*

Four of Petitioner's ineffective assistance of counsel claims can be classified as attacks on counsel's strategy at trial. When assailing a strategic choice that Petitioner's counsel made during trial, Petitioner must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). In deciding whether Petitioner has met this burden, this Court must make a "fair assessment of attorney performance," which "requires that every effort be made to eliminate the distorting effects of hindsight." *Id.*

First, Petitioner states that trial counsel should have had Petitioner take a polygraph test to prove his innocence. *See* Pet'r's Mot. 6. Trial counsel appropriately declined to arrange for a polygraph test, because the Fourth Circuit has consistently disapproved of polygraph evidence. *See, e.g., United States v. Ruhe*, 191 F.3d 376, 387-88 (4th Cir. 1999) (upholding the Fourth Circuit's *per se* ban on polygraph evidence); *United States v. Sanchez*, 118 F.3d 192, 197 (4th Cir. 1997) (stating that polygraph evidence may never be used to impeach a witness); *United States v. A & S Council Oil Co.*, 947 F.2d 1128, 1134 (4th Cir. 1991) ("This court's precedents preclude direct attacks on or bolstering of the credibility of a witness through evidence that the witness has taken a polygraph test."). A polygraph test would have been inadmissible, and undertaking the test would serve no purpose in counsel's preparation for trial. Therefore, trial counsel used sound judgment and provided effective assistance of counsel when he declined to arrange for a polygraph test.

Second, Petitioner claims that trial counsel did not sufficiently attack the credibility of Aboagye, who testified against Petitioner at his trial. *See* Pet'r's Mot. 6-7. Questioning the credibility of a witness upon cross-examination is a decision within the realm of trial counsel, a trial counsel's determination not to make credibility an issue may be considered sound trial strategy. *See Winston v. Kelley*, 592 F.3d 535, 544 (4th Cir. 2010) (stating that trial counsel's approach in attacking the credibility of a witness falls within the realm of trial strategy). Furthermore, even if trial counsel acted unreasonably in failing to attack Abaogye's credibility, Petitioner does not meet the second prong of *Strickland*, which requires that

Petitioner show a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 687. Petitioner does not explain the prejudice he suffered from trial counsel's alleged failure to sufficiently attack Aboagye's credibility. *See* Pet'r's Mot. 7. Additionally, Petitioner does not show any reason to doubt that there was ample evidence implicating Petitioner's involvement in the crime. Accordingly, Petitioner does not succeed on his claim that trial counsel provided ineffective assistance due to his allegedly deficient cross-examination of Aboagye.

Third, Petitioner argues that trial counsel should have objected to the use of evidence obtained from his cell phone and cell phone company in his jury trial. *See* Pet'r's Mot. 6. Petitioner states that the Government's use of such records implicates the Fourth Amendment of the United States Constitution, and that trial counsel acted unreasonably because he did not object to their use. *See id.* Petitioner, however, neglects to address the fact that he voluntarily waived his *Miranda* rights and allowed the police officers to browse his phone. *See* Pet'r's Mot. 7, Ex. 4. In light of this, Petitioner entirely fails to support his proposition that trial counsel acted unreasonably when he did not object to such voluntarily provided information, and his *Strickland* claim does not succeed on this point.

Furthermore, it was reasonable for trial counsel not to object to the Government's use of cell phone records that it obtained from Petitioner's service provider. Petitioner has not pointed to any facts or authorities in the Fourth Circuit demonstrating that trial counsel should have objected to the admission of such records into evidence. *See, e.g., United States v. Graham*, 846 F. Supp. 2d 384, 389 (D. Md. 2012) (stating that defendants "do not have a legitimate expectation of privacy in the historical cell site location records acquired by the government."). He merely asserts that trial counsel should have made constitutional claims in anticipation of changes to the law surrounding searches of cell phone records. *See* Pet'r's Mot. 6. Under the highly deferential standard set forth in the first prong of *Strickland*, however, an attorney does not have the obligation to "anticipate a new rule of law." *United States v. McNamara*, 74 F.3d 514, 516 (4th Cir. 1996). Without presenting a clearer argument, Petitioner cannot

7

show that trial counsel performed unreasonably when he did not make objections to the cell phone records as evidence.

Finally, Petitioner faults trial counsel for declining to call certain witnesses to testify. Petitioner claims that trial counsel should have interviewed and called Hubert Botaine and Jermaine Stukes, as well as "others," to the stand. *See* Pet'r's Mot. 5. Petitioner, however, fails to explain what testimony either Botaine or Stukes would have provided that would have helped his case. He simply states that they "could not hurt and may, in fact, aid [the] defense." Pet'r's Mot. 9. Petitioner's explanation falls short of showing that counsel made an unreasonable decision when he did not call two alleged drug dealers to testify under oath. Therefore, Petitioner's claim does not meet his burden established by the first prong of *Strickland*.

Petitioner makes two other claims regarding witnesses. First, Petitioner states that trial counsel should have called Stannina Akonner, Aboagye's girlfriend, to testify in his trial. *See* Pet'r's Mot. 5-6. Court records, however, show that Akonner did testify during Petitioner's jury trial, so Petitioner had an opportunity to question her. *See* Jury Trial, Day Three, ECF No. 33. Therefore, Petitioner's *Strickland* claim fails as his counsel was able to conduct examination of Akonner.

Second, Petitioner claims that trial counsel should have interviewed and called "other" people involved in the case. *See* Pet'r's Mot. 5. This argument lacks a sufficient factual basis as a *Strickland* claim, because it does not identify the specific individuals whom trial counsel should have contacted. *See* 466 U.S. at 690. Without more details, Petitioner cannot prove that such a decision by counsel was unreasonable and prejudicial. Accordingly, Petitioner does not show that trial counsel deprived Petitioner of effective assistance of counsel in counsel's choice of witnesses to examine for trial.

C. *Petitioner's Ineffective Assistance of Counsel Claims Regarding Co-Defendant's Plea Agreement*

Petitioner makes four arguments surrounding the use of Edward Aboagye's plea agreement in his trial, which was introduced as an exhibit in conjunction with Aboagye's testimony for the Government. First, Petitioner asserts that counsel provided ineffective assistance because he did not obtain the plea

agreement through discovery before his trial began. *See* Pet'r's Mot. 3. Second, Petitioner claims that trial counsel should have objected to the admission of Aboagye's plea agreement into evidence. *See id.* Third, Petitioner takes issue with this Court's instructions to the jury regarding the plea agreement. *See id.* at 3-4. Finally, Petitioner believes that the plea agreement submitted to the jury contained statements made by him during his own plea negotiations. *See id.* at 2. This Court addresses each of Petitioner's arguments and finds that all of them are meritless.

1. Counsel's Alleged Failure to Obtain the Plea Bargain through Discovery

Petitioner avers that trial counsel provided ineffective assistance "[b]y not obtaining Co-Defendant Edward Aboagye's Plea Agreement through discovery . . . when counsel learnt [sic] that Co-Defendant Aboagye would testify against [him]." Pet'r's Mot. 3. Petitioner has not met his burden in proving trial counsel's failure to obtain Aboagye's plea agreement. Trial counsel signed an agreement with the Government, which stated that "related *Giglio* material, such as witness' plea agreements . . . will be provided no later than one week prior to trial."[4] Discovery Material 1, ECF No. 11. While Petitioner may have desired a more expedient delivery of Aboagye's plea agreement, nothing in the record suggests that the Government failed to deliver the document in accordance with its agreement with the defense. Furthermore, the Government has affirmed it sent the plea agreement to Petitioner. *See* Gov.'s Resp. 13. Because Petitioner fails to make out any facts showing that trial counsel failed to obtain Aboagye's plea agreement, he cannot mount a successful *Strickland* claim on this issue.

2. Counsel's Failure to Object to the Jury Instructions

Petitioner claims that trial counsel should have objected to this Court's instructions to the jury on the use of Aboagye's plea agreement in its deliberations. Pet'r's Mot. 3-4. During deliberations, the jury asked the Court "whether the stipulations in Aboagye's plea agreement applied to [Petitioner]." *United States v. Marga*, 418 F. App'x 163, 163-64 (4th Cir. 2011). This Court emphasized that the facts agreed

---

[4] In *Giglio v. United States*, 405 U.S. 150 (1972), the Supreme Court held that the government's failure to inform a jury of a co-conspirator's agreement to testify constituted a violation of the Due Process Clause of the Fifth Amendment of the United States Constitution. The Court reasoned that the witness's testimony was of central importance to the Government's case, and the jury was entitled to know that he received a deal with the government in exchange for his testimony. *Id.* at 154-55.

upon by the Government and Aboagye were "not in any way binding upon [Petitioner]." *Id.* at 164. Petitioner appealed the judgment of his case on the basis that the Court erred in giving this instruction. *See id.* On appeal, the Fourth Circuit affirmed Petitioner's conviction, stating that this Court "properly informed the jury that the plea agreement and stipulations were relevant to the jury's determination of Aboagye's credibility" and that this Court "did not err, plainly or otherwise." *Id.* at 165. Because this Court properly instructed the jury on the use of Aboagye's plea agreement, there is no reason to doubt that trial counsel acted reasonably when he did not object to the instruction.

### 3. Counsel's Alleged Failure to Object to the Admission of Aboagye's Plea Agreement as Evidence

Petitioner argues that trial counsel did not provide effective assistance when he failed to object the admission of Aboagye's plea agreement in his trial. *See* Pet'r's Mot. 3. Petitioner's claim has no basis, because the Fourth Circuit has held that plea agreements by cooperating witnesses are admissible as evidence as long as "(1) the prosecutor's questions do not imply that the government has special knowledge of the witness' veracity; (2) the trial judge instructs the jury on the caution required in evaluating the witness's testimony; and (3) the prosecutor's closing argument contains no improper use of the witness' promise of truthful cooperation." *United States v. Romer*, 148 F.3d 359, 369 (4th Cir. 1998), *cert. denied*, 525 U.S. 1141 (1999).

In this case, the first and third prongs of the *Romer* analysis do not apply, because Petitioner does not challenge whether the Government attributed special knowledge to Aboagye or improperly used his promise for truthful cooperation. Petitioner does dispute the admission of Aboagye's plea agreement on the basis of the second prong of *Romer*. Specifically, Petitioner faults trial counsel for not objecting to this Court's instructions to the jury regarding the jury's use of the plea agreement in its deliberations. Contrary to Petitioner's argument, the Fourth Circuit found that this Court properly instructed the jury on this point. *See Marga*, 418 F. App'x at 165. Thus, Petitioner does not satisfy the *Romer* test, and trial counsel acted reasonably when he did not object to the admission of Aboagye's plea agreement as evidence.

4. Counsel's Alleged Failure to Object to Protected Statements in Aboagye's Plea Agreement

Finally, Petitioner argues that trial counsel should have objected to the content of Aboagye's plea agreement, because he believes that the agreement contained statements that he, rather than Aboagye, made during plea negotiations with the Government. *See* Pet'r's Mot. 2. Rule 410(a)(3) of the Federal Rules of Evidence prohibits the use of statements made during plea discussions as evidence in a trial. Aboagye's plea agreement discusses statements made by Petitioner while he and Aboagye were in police custody. *See* Pet'r's Mot. 5, Ex. 1. Although these statements came long before Petitioner's plea negotiations, Petitioner claims that the use of these statements constitutes a violation of Rule 410(a)(3), because they were protected statements he made pursuant to a plea agreement. *See* Pet'r's Mot. 2.

Petitioner misunderstands the origin of the statements written in Aboagye's plea agreement and the manner in which they were used in his trial. The statements Petitioner objects to arise out of Petitioner's detention, after he waived his *Miranda* rights.[5] *See* Pet'r's Mot. 5, Ex. 1. Aboagye's plea agreement did not contain any statements Petitioner made when he conducted his plea negotiations with the Government, thus Rule 410(a)(3) had no bearing on its admission at trial. Accordingly, trial counsel performed reasonably when he did not object to the statements in Aboagye's plea agreement.

D. *Prejudice Prong of* Strickland

While Petitioner's above claims can be dispatched for failure to meet the first prong of *Strickland*, they also fail the second prong. To satisfy the second prong of *Strickland*, Petitioner must show a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. Petitioner does not demonstrate a reasonable probability of a different outcome of his trial if counsel had performed differently. Instead, Petitioner states only that

---

[5] The relevant section in both Aboagye's plea agreement and Petitioner's proposed agreement reads as follows: "At approximately 9:40 P.M., Aboagye and Marga returned to the area of the hotel and were detained. After waiving his *Miranda* rights, Marga stated that, on March 13, 2009, he traveled from New Jersey and met with Aboagye at his hotel room. . . . Marga stated that Aboagye then drove them to the location where they met [Botaine] and discussed supplying [Botaine] with the heroin." Pet'r's Mot., Ex. 1 at 5. The rest of this section continues to detail discussions between Petitioner and the police officers after Petitioner waived his *Miranda* rights. *See id.*

11

"the accumulated effect of errors . . . led to the unjust result in this case." Pet'r's Mot. 7. Petitioner attempts to elaborate by saying "the result would have been different if [he] had been represented by effective counsel," but simply relies upon the fact that Aboagye testified against him as demonstrating prejudice. *See id*. at 7-8. Thus, Petitioner has not met his burden to prove his claim—in all the instances complained of—under the prejudice prong of *Strickland*.

    E. *Trial Counsel's Alleged Threats to Abandon Petitioner's Case*

Petitioner asserts that trial counsel threatened to abandon Petitioner's case if he took the stand in his own defense. *See* Pet'r's Mot. 7. Petitioner provides no evidence for this claim, and merely asserts it at the end of a long, but conclusory, laundry list of complaints about the performance of trial counsel. *See id.* Because this Court did not have sufficient information regarding the factual basis for this specific claim, it instructed the Government to provide further briefing on this issue. *See* Order Granting Motion to Allow Disclosure, ECF No. 98. On March 22, 2013, after the Government contacted trial counsel with respect to this issue, the Government filed a response to this Court's inquiry. Gov.'s Resp. to Court Inquiries, ECF No. 99.

Upon review of Petitioner's Motion and the Government's supplemental submission, this Court finds that Petitioner fails to show that trial counsel threatened to abandon Petitioner's case. As discussed above, Petitioner engaged in plea negotiations with the Government, but he decided to proceed to trial. Trial counsel correctly warned Petitioner of the dangers of testifying on his own behalf, because Rule 410(b)(2) of the Federal Rules of Evidence would have allowed the Government to use statements made by Petitioner during plea negotiations to impeach him at trial. *See id.* at 2. Trial counsel also extensively discussed Petitioner's right not to testify under the Fifth Amendment, which Petitioner indicated that he understood. *See id.* Furthermore, after reviewing its notes from trial, this Court finds that it informed Petitioner of his right to testify, as well as the benefits and disadvantages of exercising that right, during Petitioner's trial. Petitioner's threadbare assertion that counsel threatened to abandon the case is unsupported by facts and contradicts this Court's own notes at trial. Without more facts, Petitioner utterly fails to support a *Strickland* claim on this point.

F. *Petitioner's Right to Counsel During Pre-Trial Proceedings*

Besides his *Strickland* claims, Petitioner also argues that he was denied his Sixth Amendment right to counsel "when he stood trial against a Federal Indictment," which this Court construes to mean that Petitioner believed he had a right to counsel prior to his indictment by a grand jury. *See* Pet'r's Mot 4-5. In criminal proceedings, a defendant's Sixth Amendment right to counsel attaches only at "the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Rothgery v. Gillespie Cty.*, 554 U.S. 191, 198 (2008) (quoting *United States v. Gouveia*, 467 U.S. 180, 188 (1984)). Even after the right to counsel has attached, a defendant is entitled to the presence of appointed counsel only during a "critical stage" following the attachment of the right, which are those that amount to "trial-like confrontations" between the defendant and the government. *Id.* at 212.

In this case, Petitioner did not have the right to counsel prior to his indictment, because the right did not attach until he was actually indicted—before that point, the Government had not yet "committed itself to prosecute" Petitioner. *Id.* Instead, the right to counsel began after his "appearance before a judicial officer, when he learn[ed] the charge against him." *Id.* at 213. Petitioner made his initial appearance before this Court on March 31, 2009, when he was formally indicted by the Government. Therefore, Petitioner's right to counsel attached only after this proceeding, and he cannot succeed on a claim that his Sixth Amendment right to counsel was violated.

In summary, Petitioner does not show that trial counsel's performance fell below an objective standard of reasonableness for any of the reasons discussed above. Many of Petitioner's claims lack the factual specificity need to warrant review under Strickland. Other claims involve reasonable trial strategy by counsel, for which *Strickland* does not lie. Furthermore, Petitioner does not demonstrate that trial counsel's actions prejudiced him in any way. Therefore, Petitioner fails to mount a *Strickland* claim regarding trial counsel's performance.

## II. Petitioner's Claim of Ineffective Assistance of Appellate Counsel

Petitioner claims that appellate counsel rendered ineffective assistance of counsel because he failed to communicate with Petitioner during the appellate process and because he did not use any of the arguments that Petitioner requested. *See* Pet'r's Mot. 11. In short, Petitioner alleges that "counsel on appeal did [not] allow defendant to participate in his own appeal." *Id.* Under the performance prong of *Strickland*, Petitioner must show that appellate counsel's performance was so deficient as to fall below an "objective standard of reasonableness." 466 U.S. at 688. When assessing the reasonableness of appellate counsel's actions, this Court must make a "fair assessment of attorney performance," which "requires that every effort be made to eliminate the distorting effects of hindsight." *Id.* at 689. Upon its initial review of this specific claim, this Court determined that it required further briefing from the Government, and therefore asked the Government to investigate this issue and respond more fully. *See* Motion for Disclosure, ECF No. 97; Order Granting Motion for Disclosure, ECF No. 98. On March 22, 2013, the Government filed a response to this Court's inquiries. Gov.'s Resp. to Court Inquiries, ECF No. 99.

After reviewing the record and the supplemental submission by the Government, this Court finds that Petitioner's argument fails, because Petitioner does not show that appellate counsel acted unreasonably under the circumstances of this case. Petitioner claims that appellate counsel did not contact him to discuss his appeal. In particular, Petitioner submits as evidence one letter that he sent to appellate counsel on June 20, 2010, which was only three days before the due date of Petitioner's appellate brief and two days after appellate counsel had filed the brief. Using this evidence, Petitioner cannot make out a successful *Strickland* claim. Appellate counsel received multiple letters from Petitioner, which included arguments that counsel states he took into account but ultimately could not use. *See* Gov.'s Resp. to Court Inquiries. Considering that the only letter Petitioner has submitted was sent three days before the brief was due, Petitioner has failed to meet his burden under *Strickland* in showing that counsel's failure to raise Petitioner's requested arguments on appeal constituted ineffective assistance of counsel. Thus, Petitioner's *Strickland* claim does not succeed.

Furthermore, the three arguments that Petitioner requested in his correspondence with appellate counsel are ones that were either not supported by the record or were actually raised by counsel on appeal. *See id.* The Supreme Court has held that while a defendant has the right to appeal, appellate counsel does not have the obligation to raise every issue requested by the defendant. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) (rejecting a *per se* rule requiring counsel on appeal to raise every issue requested by a defendant). Petitioner has submitted the June 20, 2010, letter as an exhibit, which specifies the arguments that he requested appellate counsel to pursue. *See* Pet'r's Mot. 1, Ex. 4. After analyzing these three arguments, this Court finds that Petitioner fails to show that appellate counsel acted unreasonably with respect to his consideration of these issues.

First, Petitioner asked appellate counsel to argue that this Court erred when it allowed the jury to view Aboagye's plea agreement. *See id.* Counsel actually made this argument on appeal, but the Fourth Circuit rejected this claim. *See United States v. Marga*, 418 F. App'x 163 (4th Cir. 2011). Second, Petitioner requested appellate counsel to argue that he could not have been found guilty on a theory of multiple and separate conspiracies. *See* Pet'r's Mot. 1, Ex. 4. Appellate counsel, however, could have reasonably concluded that this argument was not supported by the record. *See id.* A grand jury indicted both Petitioner and Aboagye for conspiring to sell heroin together. *See* Indictment, ECF No. 1. As discussed above, the evidence in the record strongly corroborates Petitioner's involvement in a conspiracy with Aboagye, because both men worked together to distribute the heroin. Therefore, it was appropriate for appellate counsel to decline to focus on this issue, and instead argue an issue that he determined would have a greater chance of success on appeal. *See Jones*, 463 U.S. at 751 ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible."); *Smith v. South Carolina*, 882 F.2d 895, 899 (4th Cir. 1989) (finding that counsel's failure to raise a weak constitutional claim may constitute an acceptable strategic decision "to avoid diverting the appellate court's attention from what [counsel] felt were stronger claims").

Finally, Petitioner asked appellate counsel to argue that trial counsel rendered ineffective assistance during his trial. *See* Pet'r's Mot. 1, Ex. 4. The Fourth Circuit has repeatedly held that claims of ineffective assistance of counsel are not cognizable on appeal, unless the record conclusively establishes ineffective assistance. *United States v. Richardson*, 195 F.3d 192, 198 (4th Cir. 1999). The appellate court has instead stated that such claims should be brought in a motion made pursuant to 28 U.S.C. § 2255, as presented by Petitioner in this case. *See United States v. King*, 119 F.3d 290, 295 (4th Cir. 1997). This Court concludes that none of trial counsel's actions at trial was the result of ineffective assistance; therefore, appellate counsel made a reasonable decision when he did not pursue these arguments. *See* Gov.'s Resp. to Court's Inquiries. Accordingly, Petitioner fails to demonstrate that appellate counsel acted unreasonably, and he does not meet his burden under the first prong of *Strickland*.

### III. Petitioner's Remaining Motions

In addition to his Motion to Vacate, Petitioner has two other motions pending before this Court. First, Petitioner submitted a Motion for Release of Aboagye's Sentencing Transcript, in which he asks for a copy of the transcript from Aboagye's sentencing. Second, Petitioner filed a Motion to Compel Correction of Court Records to reflect that he submitted his Reply to the Government's Response. This Court addresses each motion in turn.

A. *Petitioner's Motion for Release of Sentencing Transcript (ECF No. 80)*

On August 29, 2011, Petitioner filed a Motion for Release of Aboagye's Sentencing Transcript (ECF No. 80). Petitioner claims that the First Amendment of the United States Constitution gives him the right to have access to his co-defendant's sentencing transcript. *See* Mot. for Release 1. Petitioner's argument for obtaining Aboagye's sentencing transcripts appears to be based on his continuing misconception that the Government used statements from his own plea negotiations in Aboagye's plea agreement. *See id*. This Court has addressed Petitioner's concerns surrounding the use of Aboagye's plea agreement in part I.C.4 of this Memorandum Opinion. Since Petitioner does not offer any valid reason establishing his right to Aboagye's sentencing transcript, his Motion for Release is DENIED.

B. *Petitioner's Motion to Compel Correction of Court Records (ECF No. 96)*

On January 17, 2013, Petitioner filed a Motion to Compel Correction of Court Records (ECF No. 96), which asks this Court to update the docket sheet in his case to reflect the submission of his Reply to the Government's Response. Prior to Petitioner's submission of this motion, the docket sheet in Petitioner's case, Case No. 09-cr-0166, did not list Petitioner's Reply. The Clerk of the Court has since updated the docket sheet to list Petitioner's Reply. *See* Pet'r's Reply, ECF No. 100. Therefore, Petitioner's Motion to Compel Correction is now MOOT.

## CONCLUSION

For the reasons stated above, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence is DENIED (ECF No. 81); his Motion for Release is DENIED (ECF No. 80); and his Motion to Compel Correction of Court Records (ECF No. 96) is MOOT.

A certificate of appealability shall not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (2000). A petitioner satisfies this standard by demonstrating that reasonable jurists would find that an assessment of the constitutional claims is debatable and that any dispositive procedural ruling dismissing such claims is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001). Because reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is DENIED.

A separate Order follows.

Dated: April 25, 2013

_____/s/_____
Richard D. Bennett
United States District Judge